CAREY v. GLEASON EXPLORATION & MINING CO.

CONTRACTS—SERVICES—COMMISSIONS.
On reviewing the finding of the circuit judge determining that complainant had not sustained the burden of proof by his evidence, tending to show that defendant had agreed upon a royalty as complainant's commission for finding a customer to lease a tract of mining property, *held*, that the decree should be affirmed.

Appeal from Iron; Flannigan, J.  Submitted October 6, 1914.  (Docket No. 11.)  Decided December 18, 1914.

Bill by James P. Carey against the Gleason Exploration & Mining Company and another for specific performance of a royalty contract.  From a decree for defendants, complainant appeals.  Affirmed.

*George F. Shea, Belmont Waples (Alexander Marshall, Warren, Cady & Ladd, Claudius B. Grant,* and *John H. Goff,* of counsel), for complainant.

*G. R. Empson (William P. Belden,* of counsel), for defendant Gleason Exploration & Mining Co.

MOORE, J.  This bill of complaint was filed to enforce specific performance of an alleged verbal contract between the complainant and the Gleason Company, wherein the Gleason Company, it is claimed, verbally agreed to give the complainant all he could make over and above certain amounts named, as royalty, if he could find a customer who would explore and sublease for mining purposes two tracts of iron ore lands located in Iron county, Mich., known as the Goodman and Polock properties, of which the Gleason Company was lessee.  From a decree in favor of the defendants the case is brought here by appeal.

The board of directors of the Gleason Company were Albert E. Neff, Clayton Voorhis, and Michael Gleason, Matt E. Gleason, and J. C. McCreevy. Mr. Neff was president, Matt E. Gleason was vice president, and Michael Gleason was general manager.

There is no dispute about the complainant having found a customer for the Gleason Company, but it is claimed by the Gleason Company that complainant received his commission from the customer in the sum of $15,000, and that the Gleason Company never agreed to pay the complainant a commission. It is the claim of complainant that such an agreement was made through Matt E. Gleason. Counsel for complainant state:

"The questions involved which are raised by the pleadings and testimony are whether the defendant, Gleason Company, contracted with the complainant that, if he would secure some one who would explore the mining properties of defendant and would develop the same, defendant would give to complainant all he could sell, lease, or dispose of the same for over and above 47 cents per ton on ore mined on the Polock property, and all * * * on the Goodman property above 40 cents per ton. This includes the question whether Vice President and Director Matt Gleason had power or authority, express or implied, to contract on behalf of the company, and whether he did so contract."

Counsel for the appellee contend for the following propositions:

"(1) That the verbal agreement relied upon by complainant to secure from this defendant as a commission all the royalty which could be obtained in excess of 47 cents per ton on the Polock property and 40 cents per ton on the Goodman property was never in fact made by Matt E. Gleason.

"(2) That Matt E. Gleason had no express or implied authority to make any such agreement in behalf of the Gleason Exploration & Mining Company, and

that such agreement, if made, was never ratified or adopted by the Gleason Company.

"(3) That the verbal agreement alleged to have been made by complainant with the Gleason Company is void and unenforceable as against public policy, in view of the undisputed evidence that complainant demanded and secured from Mr. Kendall's Company a commission of $15,000 in cash without disclosing to it the fact that he likewise claimed a commission from the Gleason Company."

The case was heard in open court. The trial judge in disposing of the case filed a lengthy opinion in writing, in which he reviewed the testimony at length. He concludes his opinion as follows:

"A careful examination of the record and briefs of counsel fails to remove, but rather to fix, the impression obtained at the hearing that on the question whether the contract claimed by the complainant was in fact entered into by Matt Gleason with or without authority, the complainant has not preponderated.

"That Matt Gleason, as director and vice president, did not, because of such offices, have authority to bind his company on the contract claimed is clear. No evidence was introduced tending to show the Gleason Company, either expressly or impliedly, authorized him to make such contract. On the contrary, the evidence is convincing the company had determined not to sublet these properties at a less royalty than 45 and 50 cents net to the company, and consequently, if Matt Gleason did undertake to conclude on the part of his company, the contract in question, it would be ineffectual unless it appears it was ratified.

"The learned counsel for complainant do not gravely contend Matt Gleason was authorized to make the contract, but, in the argument and in a carefully prepared brief they endeavor to convince the contract was ratified. They invoke the rule of law which holds a principal, who has accepted benefits under an unauthorized contract, to a ratification of all the terms of such contract of which he had notice or regarding which he is fairly put upon inquiry. That rule of law is elementary, but unfortunately for the complain-

ant, when applied to the facts in this case, serves rather to defeat than to sustain ratification. The rule relieves from the penalty of involuntary ratification the principal who is diligent in inquiring, and yet does not know, or who is relieved from inquiring by the conduct of the other party. The Gleason Company was relieved from inquiry by the statement which Mr. Carey volunteered to its general manager, just before the Gleason Company bound itself to the New York Company, that his compensation, which was to be $15,000, was to come from the latter company. The general manager would have the right to assume that when Mr. Carey went into the subject of his compensation he would disclose all his claims in that regard, and was justified in resting and in acting without further inquiry.

"It would be a strange rule which would hold a principal, upon acceptance of the terms of an unauthorized contract which are known to him, to a ratification of other terms of the same contract which are unknown to him, and which are withheld or disclaimed by the other party at a time when the principal was able to go on, or refuse to go on, with the contract in its entirety.

"The discussion of the question whether there was ratification might be extended, but is not necessary, and would not be interesting in view of the conclusion that the alleged contract was not made."

The case was argued at length orally in this court. It is also well briefed. We have examined the record and briefs with care. It would profit no one to set out the testimony here. We shall content ourselves with saying that the testimony does not sustain the averments of the bill of complaint, but, on the contrary, it preponderates in favor of the contention of defendants that no contract to pay complainant a bonus was made.

The decree is affirmed, with costs.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.